USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/10/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Asesoral Business Partners LLC,

                Plaintiff,

    –v–

Seatech Worldwide Corporation, *et al.*,

                Defendant.

19-cv-11512 (AJN)

ORDER

---

ALISON J. NATHAN, District Judge:

    Plaintiff Asesoral Business Partners, LLC brought this action against Defendants Seatech Worldwide Corporation ("Seatech"), Alliance Fisheries, Inc. ("Alliance Fisheries") and Jesus Delgado ("Delgado") (collectively "Defendants"). Presently before the Court is Plaintiff's Motion for Default Judgment. Dkt. No. 28. For the reasons that follow, that motion is GRANTED in part and DENIED in part.

    **I.    Background**

        **A. Factual Background**

    The following facts are taken from the First Amended Complaint, Dkt. No. 11 ("FAC"), unless otherwise noted. Plaintiff is a food broker providing seafood to retail stores, restaurants and distributors. FAC ¶ 5. Defendant Seatech is a commercial wholesaler of seafood, while Defendant Alliance Fisheries, Inc. is an international processor, seller, and distributor of canned tuna fish to retail stores, restaurants and distributor. FAC ¶¶ 6–7. Defendant Delgado, meanwhile, is the principal, owner, majority shareholder, officer and/or director, and President of Seatech and Alliance Fisheries. FAC ¶ 8.

The present matter arises out of a settlement agreement that the parties entered into on or about February 28, 2019, after Seatech had failed to timely deliver three containers of products that Asesoral had purchased for $247,360. FAC ¶ 9. The settlement agreement provided that Seatech would deliver three containers of products to Asesoral by March 30, 2019, May 30, 2019, and July 30, 2019; that it would pay an additional $123,908.00 to Asesoral by two wire transfers; and that it would furnish monthly accounting of revenues generated by the *Van Ecuador* brand, as well as issue payment to Plaintiff of the actual revenues generated by the *Van Ecuador* brand. FAC ¶ 10.[1]

Seatech did not abide by the terms of the settlement agreement, however, and it failed to ship the three containers, failed to pay the agreed-upon wire transfers, and failed to provide monthly accounting and related revenues of the *Van Ecuador* brand. FAC ¶ 11.

Despite the breaches of the settlement agreement, Plaintiff continued to sell to Seatech. FAC ¶ 12. As part of that process, Plaintiff would ship the goods and transmit an invoice to Seatech, which would confirm the identity, quantity, and price of the product shipped. FAC ¶ 13. While Seatech did not transmit forms in return, Delgado signed many of the invoices issued by Plaintiff, acknowledging their terms. FAC ¶ 13. Over the course of the business relationship between Plaintiff and Seatech, Plaintiff extended to Seatech a line of credit that allowed Seatech to defer payment on invoices to 21 days after delivery of goods rather than pay at the time of receipt of goods. FAC ¶ 14. Per the terms of the invoices, Seatech's payment for each shipment became due either immediately or within 21 days of receipt, and the invoices further provided that a monthly rate of 1.5% interest would be assessed on any past due amounts. FAC ¶ 15. Yet despite Plaintiff's efforts to recover the amounts due, Seatech failed to make any payments

---

[1] By a separate assignment agreement, Seatech and Delgado had assigned to Plaintiff a 30% interest in its *Van Ecuador* brand. *See* FAC at 3 n.1.

against invoices dated from May 8, 2019 to May 16, 2019, accruing an additional balance of $185,053, plus the 1.5% interest per month outlined in the invoice terms.

Around June 26, 2019, Defendants attempted to make a partial payment on Seatech's outstanding debts, and Alliance Fisheries and Delgado issued a $28,000 check payable to Plaintiff. FAC ¶ 17. On June 28, 2019, however, Plaintiff's bank notified Plaintiff that the check issued by Alliance Fisheries would be returned due to insufficient funds. FAC ¶ 18.

Following this, on October 23, 2019, Plaintiff sent Seatech a letter by certified mail demanding that Seatech pay the full amount owed to Plaintiff, which at that point consisted of $583,321. FAC ¶ 19. Plaintiff sent Alliance Fisheries a separate letter demanding full payment of the unpaid $28,000. FAC ¶ 19. Neither Seatech nor Alliance Fisheries complied. FAC ¶ 20.

### B. Procedural Background

Plaintiff initiated this action on December 16, 2019. Dkt. No. 1. Plaintiff filed the First Amended Complaint on January 6, 2020. Dkt. No. 11. Plaintiff served the Amended Complaint on all three defendants and filed affidavits of service on January 31, 2020. *See* Dkt. Nos. 14–16. On March 18, 2020, Plaintiff sought certificates of default on the three defendants, which were issued by the Court on that same day. *See* Dkt. Nos. 18–20, 23–25.

Plaintiff then filed its motion for default judgment on June 24, 2020. *See* Dkt. No. 28. Along with its motion for default judgment, Plaintiff filed an affirmation from its attorney, M. Salman Ravala, see Dkt. No. 29, along with an affidavit from its authorized representative, Fernando Martinez. Dkt. No. 30. Plaintiff also filed a memorandum of law in support of its motion, Dkt. No. 31 ("Pl. Br."). On that same day, Plaintiff filed an affidavit of service for all three defendants. Dkt. No. 33.

### II.   Legal Standard

Federal Rule of Civil Procedure 55 sets out a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Mickalis Pawn Shop*, 645 F.3d at 128. Rule 54(c), meanwhile, states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Whether entry of default judgment at the second step is appropriate depends upon whether the allegations against the defaulting party are well-pleaded. *See Mickalis Pawn Shop*, 645 F.3d at 137; *Yi Feng Leather Int'l LTD v. Tribeca Design Showroom, LLC*, No. 17 CIV. 05195 (AJN), 2019 WL 4744620, at *1 (S.D.N.Y. Sept. 30, 2019). Once a party is in default, "a district court must accept as true all of the factual allegations of the non-defaulting party and draw all reasonable inferences in its favor." *Belizaire v. RAV Investigative and Sec. Servs., Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014). But because a party in default does not admit conclusions of law, a district court must determine whether the plaintiff's allegations are sufficient to establish the defendant's liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The legal sufficiency of these claims is analyzed under the familiar

plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.   Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00, and there is complete diversity between the parties. *See* FAC ¶¶ 2–8.  The Court has personal jurisdiction over the three Defendants because Seatech and Alliance Fisheries are domestic business corporations authorized and existing under the laws of New York with their principal places of business in New York and because Delgado is a resident of New York.

### IV.   Discussion

For the reasons that follow, the Court finds that Defendants are in default and that default judgment is warranted against Seatech as to Counts 1, 2, 3, and 10.

#### A. Liability

##### 1. Default judgment against Seatech, but not Delgado, is warranted on Counts 1–3

The first three counts in the Amended Complaint charge Defendants Seatech and Delgado for breach of contract, goods sold and stated, and account stated.  The first claim relates to Seatech's breach of the settlement agreement that it entered into with Plaintiff, while the other two claims relate to Seatech's failure to pay the amounts owed on the goods that Plaintiff sold to Seatech, as established by the invoices that were issued by Plaintiff and accepted by Seatech.

Under New York law, "to make a claim for breach of contract, a plaintiff must allege: (1) the existence of an agreement between itself and the defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by the defendant; and (4) damages to

the plaintiff caused by that defendant's breach." *Ancile Inv. Co. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 303 (S.D.N.Y. 2011).

As to the first claim, Plaintiff alleges that Seatech entered into a valid and enforceable contract on or about February 28, 2019, which committed Seatech to shipping three containers of products, paying the agreed-upon wire transfers, and providing monthly accounting and related revenues related to the *Van Ecuador* brand. *See* FAC ¶ 10. That establishes the first element of the test under New York law. *See Ancile Inv. Co.*, 784 F. Supp. 2d at 303. In addition, because the settlement agreement was a result of Seatech's prior failure to deliver three containers of products that Asesoral had purchased for $247,360, the Amended Complaint also establishes that Plaintiff performed under the terms of the agreement. *See* FAC ¶ 9. Furthermore, Plaintiff's pleadings establish that Seatech did not abide by the terms of the settlement agreement, as it failed to ship the three containers, pay the agreed-upon wire transfers, and provide the required monthly accounting and related revenues related to the *Van Ecuador* brand. *See* FAC ¶¶ 11, 30. That covers the third element. And finally, the Amended Complaint establishes that Seatech's failure to abide by the terms of the settlement agreement deprived it of the three containers to which it was entitled per the terms of the agreement, in addition to the wire transfers and Plaintiff's *pro rata* share of revenues generated by the *Van Ecuador* brand. *See* FAC ¶ 31, 33–34. As a result, Plaintiff has established Seatech's liability for breach of contract for violating the terms of the settlement agreement.

Plaintiff also brings claims against Seatech and Delgado under theories of "goods sold and delivered" and "account stated." FAC ¶¶ 36–41, 43–48. Under a "goods sold and delivered" theory, "a seller may recover the contract price upon a showing that the goods were ordered, received, and accepted by the purchaser, who did not subsequently reject them within a

reasonable period of time." *Peace Mark (Holdings) Ltd. v. Int'l Watch Grp., Inc.*, No. 08-CV-2460 (RRM), 2010 WL 986559, at *3 (E.D.N.Y. Feb. 1, 2010), *report and recommendation adopted*, No. 08-CV-2460 (RRM) (RLM), 2010 WL 1005780 (E.D.N.Y. Mar. 17, 2010). *See also Conocophillips v. 261 E. Merrick Rd. Corp.,* 428 F.Supp.2d 111, 126 (E.D.N.Y. 2006) (describing the essential elements of the cause of action as "the purchase, sale and delivery of goods at an established price and nonpayment therefor.").

Here, too, Plaintiff has established Seatech's liability. Specifically, Plaintiff pled that it sold and delivered goods under the terms of the unpaid invoices, that Seatech made "material misrepresentations" that led Plaintiff to continue to sell to Seatech, that as part of the parties' ongoing business relationship, Plaintiff extended to Seatech a line of credit pursuant to the terms of the invoices, that Delgado, on behalf of Seatech, signed "many of the invoices," and that consistently, Seatech accepted and retained those goods without objection within a reasonable time. *See, e.g.*, FAC ¶¶ 13–16, 37–38. In support of its claim, Plaintiff submitted as evidence the invoices. *See* Pl. Br., Ex. B. Accordingly, Plaintiff has also established a cause of action against Seatech for goods sold and delivered.

Along similar lines, "under New York law an 'account stated' refers to a promise by a debtor to pay his creditor a stated sum of money that the parties had agreed upon as the amount due." *Peace Mark (Holdings) Ltd.*, 2010 WL 986559, at *3. *See also White Diamond Co. v. Castco, Inc.,* 436 F. Supp. 2d 615, 623 (S.D.N.Y. 2006). The promise, whether express or implied, "must be founded upon previous transactions creating the relationship of debtor and creditor," and "[t]he transactional history may be evidenced by invoices submitted to the defendant on a regular basis, such as those commonly included with the delivery of goods to a purchaser." *Peace Mark (Holdings) Ltd.*, 2010 WL 986559, at *3. And "[b]oth partial payment

and assurances of payment after receipt of an account stated are evidence of assent to the account stated." *White Diamond Co.*, 436 F. Supp. 2d at 624. After a plaintiff establishes a *prima facie* claim for an account stated, the burden shifts to the defendant to refute the claim with documentation of objections made to the account. *See id.* Thus, "[a]s a general rule, where an account is made up and rendered . . . [and] the party receiving it . . . makes no objection within a reasonable time, his silence will be construed into an acquiescence in its justness, and he will be bound by it as if it were a stated account." *See Tom Rice Buick–Pontiac v. General Motors Corp.,* 551 F.3d 149, 157 (2d Cir. 2008) (quoting *Rodkinson v. Haecker,* 248 N.Y. 480, 485 (1928) (alterations in original)).

Plaintiff has established that its ongoing business relationship with Seatech created the relationship of debtor and creditor, and Plaintiff has submitted as evidence the invoices that reflect the ongoing transactional history between the two entities. Those invoices show an account that was "made up" and "rendered." *See Tom Rice Buick–Pontiac*, 551 F.3d at 157; Pl. Br., Ex. B. And, as already noted, the well-pleaded facts in the Amended Complaint establish that Seatech, the debtor, promised to pay Plaintiff, its creditor, for the goods sold. Plaintiff has accordingly established a *prima facie* case of account stated. The Amended Complaint also establishes that Seatech never objected within a reasonable time, and that in many occasions Delgado, on behalf of Seatech, signed the invoices. *See, e.g.*, FAC ¶¶ 13–16. And because the Defendants never responded to the Plaintiff's Amended Complaint nor appeared in this action, no objections to the accounts or the invoices were ever presented to the Court. *See Peace Mark (Holdings) Ltd.*, 2010 WL 986559, at *3. Thus, Plaintiff's account stated claim establishes a further basis for Seatech's liability.

However, Plaintiff has not established Delgado's personal liability as to these three claims. The Amended Complaint does not establish that Delgado was a party to the settlement agreement in his personal capacity. And a plaintiff "may not assert a cause of action to recover damages for breach of contract against a party with whom it is not in privity." *Yucyco, Ltd. v. Republic of Slovenia,* 984 F. Supp. 209, 215 (S.D.N.Y. 1997) (quoting *Perma Pave Contracting Corp. v. Paerdegat Boat & Racquet Club, Inc.,* 549 N.Y.S.2d 57, 58 (2d Dep't 1989)). In other words, "absent a contractual relationship there can be no contractual remedy." *Suffolk County v. Long Island Lighting Co.,* 728 F.2d 52, 63 (2d Cir. 1984). Accordingly, to the extent that Plaintiff seeks to establish Delgado's personal liability for the breach, that claim is denied.

### 2. Default judgment is not warranted on Count 4

Plaintiff next brings a claim against all Defendants under N.Y. Gen. Ob. L. § 11-104. That statute provides that

> a drawer negotiating a check who knows or should know that payment of such check will be refused by the drawee bank . . . because the drawer has insufficient funds . . . shall be liable . . . to the payee . . . for the face value amount of the check [and] for additional, liquidated damages, where the check is dishonored and the drawer fails to pay the face amount of such check within thirty days following the date of mailing by the payee of the second written demand for payment . . . .

N.Y. Gen. Ob. L. § 11-104(1). The statute therefore "provides for the recovery of 'additional, liquidated damages' in situations where an individual tenders a check that he or she knows or should know will not be honored for payment, though "[t]o be entitled to such additional damages, however, the payee must comply with the requirements of Section 11–104(7) of the New York General Obligations Law." *Larsen v. JBC Legal Grp., P.C.*, 533 F. Supp. 2d 290, 304 (E.D.N.Y. 2008). Under Section 11–104(7), "[t]he first written demand for payment on the dishonored check . . . shall be sent . . . by first class mail and by certified mail return receipt requested with delivery restricted to the drawer, " while "[t]he second written demand for

payment on the dishonored check . . . shall be sent . . . by first class mail on or after the fifteenth day following the date of receipt of the first written demand for payment." *Id.* (citing N.Y. Gen. Ob. Law § 11-104(7)). The statute further establishes the notice language that must be employed. *See* N.Y. Gen. Oblig. L. § 11–104(8).

While Plaintiff pleads that it sent a letter to Seatech and it sent another letter to Alliance Fisheries on October 23, 2019 demanding payment, *see* FAC ¶ 19, Plaintiff has failed to establish liability on this count because the Amended Complaint does not allege that Plaintiff sent a "second written demand for payment on the dishonored check . . . on or after the fifteenth day following the date of receipt of the first written demand for payment." N.Y. Gen. Oblig. L. § 11-104(7). So though Plaintiff has alleged that two letters were sent, that is insufficient to comply with the requirements set forth in § 11-104(7).

Accordingly, Plaintiff's motion for default judgment as to Count 4 is denied.

### 3. Default judgment is not warranted on Count 5

Plaintiff next asserts a claim against Delgado for personal liability under U.C.C. § 3-403. *See* FAC ¶¶ 54–57. That provision of the Uniform Commercial Code governs unauthorized signatures. Plaintiff expressly concedes that Delgado was "an authorized representative" of Alliance Fisheries. Pl. Br. at 10. So Plaintiff's argument hinges on its theory that the check is "insufficient, on its face to suggest that Defendant Delgado intended to sign in a representative capacity," and that Delgado is "personally liable to Plaintiff for the sum off (sic) all liabilities arising from the aforementioned check." *Id.* at 9–10.

Plaintiff's claim is undercut by its concession that Delgado was an "authorized representative" of Alliance Fisheries, *id.* at 10, and by the fact that the identifying information on the upper-left corner of the check reflects that the check was Alliance Fisheries', *see* Dkt. No.

31-4 at 2. Plaintiff does not develop the argument that Delgado's signature was thus *unauthorized* for purposes of the provision. Furthermore, Plaintiff cites no legal authority in support of its argument other than the UCC provision and the corresponding comment. *See* Pl. Br. at 9–10. Without more, Plaintiff has not established that default judgment is warranted on this count, and the motion for default judgment as to Count 5 is denied.

### 4. Default judgment is not warranted on Count 6

Plaintiff also asserts that all Defendants are liable for fraud and fraudulent inducement. *See* FAC ¶¶ 59–64. "To prove fraud under New York law, 'a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (quoting *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,* 57 F.3d 146, 153 (2d Cir. 1995)).

In a diversity action such as this, state-law fraud claims must be pled with particularity pursuant to Rule 9(b). *See Premium Mortg. Corp.* v. *Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009); *Murray Eng'g P.C. v. Remke*, No. 17-CV-6267 (KPF), 2018 WL 3773991, at *3 (S.D.N.Y. Aug. 9, 2018). Accordingly, such claims must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks and citation omitted). Furthermore, such a claim must also "allege facts that give rise to a strong inference of fraudulent intent." *Berman* v. *Morgan Keegan & Co.*, 455 F. App'x 92, 95 (2d Cir. 2012) (internal quotation marks and citation omitted). A litigant may establish a "strong inference" of

fraud by "alleging facts to show that defendants had both motive and opportunity to commit fraud," or "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290–91 (internal quotation marks and citations omitted).

Even drawing all reasonable inferences in Plaintiff's favor, *Belizaire v. RAV Investigative and Sec. Servs., Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014), that standard is not met here. The allegations in the Amended Complaint are too conclusory and do not state with particularity what was said or where and when the specific statements were made. The Amended Complaint proffers that "[o]n several occasions, including between June and July 2019, Defendants deliberately and misleadingly misrepresented . . . over telephone and in e-mail conversations and through WhatsApp messages that checks intended to pay for prior shipments were in the mail or forthcoming." FAC ¶ 61. But Plaintiff does not identify *specific* statements and states only in somewhat general terms *when* the statements were made. *See Lerner*, 459 F.3d at 290. Taken as a whole, the allegations in the Amended Complaint and in Plaintiff's brief in support of its motion for default judgment are inadequate to support a claim for fraud and fraudulent inducement that satisfies Rule 9(b)'s heightened pleading requirement. *See id.*; *Murray Eng'g P.C.*, 2018 WL 3773991, at *14; *McCormack* v. *IBM*, 145 F. Supp. 3d 258, 269 (S.D.N.Y. 2015). Accordingly, Plaintiff's motion is denied as to Count 6.

### 5. Default judgment is not warranted on Counts 7, 8, and 9

Plaintiff's next three claims—unjust enrichment (Count 7), breach of the covenant of good faith and fair dealing (Count 8), and promissory estoppel (Count 9)—are denied as duplicative.

Plaintiff concedes that "[i]t is generally understood that the existence of a valid and enforceable contract bars recovery based on the quasi-contract theory of unjust enrichment." Pl. Br. at 11 (citing *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268 (N.Y. 2009)). And it explains that "[i]n the event that the Court should find the aforementioned contracts invalid, for any reason, Plaintiff, in the alternative, states a claim for unjust enrichment." *Id.* Since the Court has determined that the contracts at issue—both the settlement agreement and any contractual relationship that emerged from the transactions reflected in the invoices—are valid, Count 7 is thus duplicative and the motion for default judgment as to that claim is denied accordingly.

While Plaintiff does not stipulate that Count 8 is also duplicative, a fair reading of the allegations compels the conclusion that its motion must be denied on similar grounds as to Count 8. "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992) (internal quotation marks and citations omitted); *see also Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002). As a general matter, to avoid redundancy, "[c]laims of breach of the implied covenant . . . must be premised on a different set of facts from those underlying a claim for breach of contract." *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012) (*Deutsche Bank Sec. Inc. v. Rhodes,* 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008)). Thus, "[a] party may maintain a claim for breach of the implied covenant only if the claim is based on allegations different from the allegations underlying the accompanying breach of contract claim," and "[a] claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant

of an express provision of the underlying contract." *Id.* (quoting *Deutsche Bank Sec. Inc*, 578 F. Supp. 2d at 664; *ICD Holdings S.A. v. Frankel,* 976 F. Supp. 234, 243–44 (S.D.N.Y. 1997)). Plaintiff's assertion of liability points to "default of the Settlement Agreement, withholding of payment for unpaid invoices, and execution and issuance of bad checks" as "constitut[ing] material breaches of the implied covenant of good faith and fair dealing." Pl. Br. at 12. The first two are expressly duplicative of the other claims Plaintiff asserts, while the execution and issuance of bad checks—tied as they were to satisfaction of the debt created by the settlement agreement and the other transactions—is substantially duplicative of counts 1 through 3 and is not premised "on a different set of facts from those underlying a claim for breach of contract." *Deutsche Bank Sec., Inc.*, 578 F. Supp. 2d at 664; *see also Bear Stearns Inv. Prod., Inc. v. Hitachi Auto. Prod. (USA), Inc.*, 401 B.R. 598, 628 (S.D.N.Y. 2009). Plaintiff therefore does not state a viable cause of action under New York law, and the motion for default judgment is denied as to Count 8.

Plaintiff's promissory estoppel claim (Count 9) is also duplicative. Plaintiff grounds this claim on the theory that "Defendants promised Plaintiff fulfillment of the terms of the Settlement Agreement, as well as payment of outstanding invoices. Defendants knew or should have known that Plaintiff would reasonably rely on these promises, and that such reliance would be to the Plaintiff's detriment." Pl. Br. at 12. On its face, then, the promissory estoppel claim maps entirely onto Plaintiff's breach of contract, goods sold and stated, and account stated claims. And because the claim is duplicative, the Court declines to enter default judgment on it. *See Carlson Produce, LLC v. Clapper*, No. 18-CV-07195 (VKD), 2020 WL 533004, at *3–4 (N.D. Cal. Feb. 3, 2020) (declining to enter default judgment on a promissory estoppel claim after finding it to be duplicative of a breach of contract claim).

Accordingly, the motion for default judgment is denied as to Counts 7, 8, and 9.

### 6. Default judgment on Count 10 is warranted

Finally, Plaintiff seeks to establish Seatech's liability under a theory of accounting. An accounting "is a traditional equitable remedy that requires a person who misappropriates the property of another to explain (account for) the funds and to return what is not rightly his." *Dev. Specialists, Inc. v. Dechert LLP*, 532 B.R. 473, 480–81 (S.D.N.Y. 2015). "Being equitable in nature, the scope of relief available can vary with the facts." *Id.* at 481.

Plaintiff seeks an accounting of all revenues associated with the *Van Ecuador* brand. *See* Pl. Br. at 13. The Amended Complaint pleads that Seatech had assigned to Plaintiff a 30% interest in its *Van Ecuador* brand before re-assigning 100% of its interest in *Van Ecuador* to a third party. *See* Am. Compl. at 3 n.1. And because the settlement agreement reflects that Seatech had transferred 30% of its ownership interest in the *Van Ecuador* brand to Plaintiff, *see* Dkt. No. 31-1 ¶ 4, this provides a sufficient basis for an order directing Seatech to account for the revenues of the *Van Ecuador* brand in order to enable Plaintiff to determine what it is owed pursuant to the terms of the settlement agreement.

Accordingly, the motion for default judgment as to Count 10 is granted.

### B. Damages

Because liability has been established, the remaining question is whether the plaintiff has provided support for the sought-after relief. "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Canaveral v. Midtown Diner NYC, Inc.*, No. 19-CV-635 (GBD) (JLC), 2019 WL 4195194, at *2 (S.D.N.Y. Sept. 5, 2019) (quoting

*Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "[T]he district court cannot simply rely on the plaintiff's statement of damages; there must be a basis upon which the court may establish damages with reasonable certainty," which means that the plaintiff must demonstrate his entitlement to damages "based on admissible evidence." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010). "The Federal Rules of Evidence require that documents be authenticated before they can be admitted into evidence." *Id.* (citing Fed. R. Evid. 901(a)).

Plaintiff relies primarily on attachments to its memorandum of law to establish a basis for damages: The settlement agreement; the invoices; a document identifying assignment of the *Van Ecuador* trademark; and the NSF check and bank notice. *See* Pl. Br., Exs. A–D. These documents are not independently authenticated by affidavit, though the settlement agreement and invoices are referred to in Fernando Martinez's affirmation, *see* Dkt. No. 30. But the evidence submitted in support of Plaintiff's motion has not otherwise been authenticated, and the docket entry in which they were included does not include any indication supporting their authentication.

Thus, by separate order, the Court will refer the matter to Magistrate Judge Sarah L. Cave for an inquest to ascertain damages.

### C. The request for punitive damages is denied

In the Amended Complaint, Plaintiff sought punitive damages. *See* FAC ¶¶ 85–86. The motion for default judgment does not develop this argument, instead conclusorily stating that Plaintiff seeks "all other compensatory, economic, incidental, liquidated, and punitive damages on all causes of action where allowable." Pl. Br. at 14. Because the argument is undeveloped

and Plaintiff provides no authority establishing its entitlement to punitive damages, to the extent that the motion for default judgment seeks punitive damages, it is denied in this respect.

### D. The request for attorneys' costs and fees is denied

Plaintiff's request for attorneys' fees is denied. Pl. Br. at 16–17. "The United States follows the 'American Rule' regarding attorney's fees: '[T]he prevailing party may not recover attorneys' fees as costs or otherwise.'" *Castillo Grand, LLC v. Sheraton Operating Corp.*, 719 F.3d 120, 123 (2d Cir. 2013) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 245 (1975)). The rule may be "modified by statute" or "relaxed under common law principles in the most extraordinary of instances." *Id.* (citation and internal quotation marks omitted).

In support of its motion, Plaintiff cites *Roberson v. Giuliani*, 346 F.3d 75 (2d Cir. 2003), a case regarding a suit brought under 42 U.S.C. § 1983. Prevailing parties in a § 1983 case are entitled to attorneys' costs and fees under 42 U.S.C. § 1988, which provides that a court may "allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *Id.* at 78. Plaintiff cites no comparable statute here and provides no other reason for the Court to depart from the American Rule. Accordingly, the request for attorneys' costs and fees is denied.

### V. Conclusion

Plaintiffs' motion for default judgment is GRANTED as to Defendant Seatech Worldwide Corporation on Counts 1, 2, 3, and 10, and DENIED as to the rest. This resolves Dkt. No. 28.

By separate Order, this matter will be referred to the Magistrate Judge for an inquest to ascertain damages.

SO ORDERED.

Dated: March 10, 2021
       New York, New York

_____
ALISON J. NATHAN
United States District Judge